**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| GODWIN EHIREMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 14-CV-292-GKF-FHM |
| | ) |
| STANLEY GLANZ, SHERIFF OF | ) |
| TULSA COUNTY, in his official and | ) |
| individual capacities, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the court is the Motion to Dismiss [Dkt. #9] filed by defendant Stanley Glanz, Sheriff of Tulsa County, pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Plaintiff Godwin Ehireman, a former detention officer with the Tulsa County Sheriff's Office, filed suit in Tulsa County District Court, asserting claims of race discrimination, retaliatory discharge and intentional infliction of emotional distress ("IIED") against Glanz in his individual and official capacities and the Board of County Commissioners of Tulsa County ("BOCC"). He seeks back pay and benefits, front pay, compensatory damages for non-pecuniary losses, punitive damages and attorney fees.

Defendants removed the case to federal court based on federal question jurisdiction, and each filed a motion to dismiss. Plaintiff confessed the BOCC's motion, which the court granted on October 16, 2014. [Dkt. #16].

In his motion, Glanz asserts (1) the Petition fails to state a plausible claim against him in his individual capacity; (2) the Petition fails to allege facts sufficient to state plausible claims for disparate treatment, retaliatory discharge, and/or IIED; (3) the Title VII claims must be dismissed for failure to exhaust administrative remedies; and (4) plaintiff is not entitled to punitive damages against Tulsa County and/or the Board of County Commissioners of Tulsa County.[1]

Plaintiff concedes the motion with respect to his IIED claim. Further, he agrees he is not entitled to punitive damages against Sheriff Glanz in his official capacity, although he contends he may seek punitive damages against Sheriff Glanz in his individual capacity. He opposes the motion in all other respects, and asks that if it is granted, he be given leave to file an Amended Complaint.

## I. Allegations of the Petition

Plaintiff filed a charge of discrimination against defendants with the Equal Employment Opportunity Commission ("EEOC"). [Dkt. #2, Petition, ¶7]. Plaintiff received a Notice of Right to Sue, and filed the Petition within 90 days of receipt of the Notice of Right to Sue. [*Id.*].

Plaintiff, an African American male, began working for defendants as a detention officer in July of 2005. [*Id.*, ¶¶12-13]. Through the lottery system, he was assigned to work in the inmate library. [*Id.*, ¶14]. He was the first African American to hold this position. [*Id.*]. When he began working in the position, his supervisor, Chaplain Hardgrove, told him he did not have time to train plaintiff and insinuated he did not want him in the position. [*Id.*]. Chaplain Hardgrove failed to train plaintiff and harbored animus toward him because of his race. [*Id.*].

---

[1] In his Reply, Sheriff Glanz also asserts for the first time that the § 1981 claim against him in his official capacity should be dismissed because the Petition fails to identify a specific policy created and enforced by the sheriff's office that was responsible for his alleged deprivation of rights, as required by *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658 (1978). [Dkt. #15 at 4]. As defendant failed to raise this argument in his motion, thereby depriving plaintiff of an opportunity to respond, the court declines to consider it. *See* LCvR7.2(h).

2

Plaintiff "continued to be subjected to different terms and conditions of employment as compared to his non-African American counterparts" and Chaplain Hardgrove "so resented the Plaintiff, because of his race, that Hardgrove hired a Caucasian part-time worker, Cassandra," even though "[t]he position had never required two people in the past." [*Id.*, ¶15].

Chaplain Hardgrove retired and Mr. Holloway became plaintiff's supervisor. [*Id.*, ¶16]. Mr. Holloway took away plaintiff's telephone, desk and computer, and moved plaintiff to a different location away from the supplies he needed to complete his duties. [*Id.*]. All of the supplies taken from plaintiff were given to Cassandra. [*Id.*]. Additionally, because plaintiff's computer had been taken away, he was forced to share a computer with a volunteer. [*Id.*]. Plaintiff suffered this different and demeaning treatment because of his race and national origin. [*Id.*]. His non-African American counterparts did not suffer differential treatment. [*Id.*].

When plaintiff began reporting to Sergeant Hinshaw, he suffered harsher discipline than his Caucasian coworkers. [*Id.*, ¶17]. He was called into an internal affairs investigation and forced to take a lie detector test for allegedly engaging in an inappropriate relationship with an inmate. [*Id.*]. Plaintiff is aware of non-African American coworkers who were not disciplined as harshly as he was "for similar or worse policy violations." [*Id.*]. "Specifically, Plaintiff recalls that even amidst suspicion that Sergeant Housley (Caucasian) and Sergeant Kaiser (Caucasian) violated procedure, which resulted in an inmate's death, those individuals were not fired" and "Corporal Stroope, Caucasian, was in charge of inmate accounts" and "when moneys went missing on her watch she was reassigned and not fired." [*Id.*]. "Plaintiff further suspects that the aforementioned individuals were not subjected to a polygraph test," and "[u]pon information and belief, the Plaintiff is aware of an intimate relationship between Major Shannon Clark and a Caucasian TCSO female employee, similarly situated to Mr. Ehireman, wherein

3

neither were disciplined nor terminated after Defendant learned of the relationship." [*Id.*]. Plaintiff was terminated although similarly situated non-African American coworkers were not," and "In fact, Plaintiff was terminated even though he had never received written discipline or any form of discipline prior to the incident that allegedly justified his termination." [*Id.*].

In or around January 2013, plaintiff requested a transfer to the classification and bond release position. [*Id.*, ¶18]. Randy Pierce informed him "he had allegedly failed a background check and was therefore ineligible for transfer." [*Id.*]. "This statement was completely false, as Plaintiff never failed a background check." [*Id.*]. Plaintiff is unaware of any non-African American coworkers who were falsely told they failed a background check. [*Id.*]. He was denied the transfer and told he failed the background check because of his race and national origin. [*Id.*].

"Finally, Plaintiff complained to Chief Robinette because the race discrimination was worsening," and "[s]hortly after making that complaint, Plaintiff was terminated from his employment out of retaliation for complaining about race discrimination." [*Id.*, ¶19].

Plaintiff asserts the following claims:

First Claim for Relief: "By terminating the plaintiff from his employment and treating him differently than similarly situated Caucasian coworkers, the Defendant has violated Title VII of the Civil Rights Act of 1964." [*Id.*, ¶21].

Second Claim for Relief: "By terminating the Plaintiff from his employment and treating him differently than similarly situated Caucasian coworkers, the Defendant has violated 42 U.S.C. § 1981." [*Id.*, ¶23].

Third Claim for Relief: "Plaintiff complained about the disparity in treatment. By terminating Plaintiff's employment in retaliation for his complaints regarding the unfair

treatment and race discrimination, Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a)." [*Id.*, ¶¶25-26].

Fourth Claim for Relief: "The Defendants' actions of intentional and malicious discrimination and retaliation are extreme and outrageous and have caused severe emotional and psychological damage to the Plaintiff" and "Defendants intentionally or recklessly caused severe emotional distress to Plaintiff beyond which a reasonable person could be expected to endure." [*Id.*, ¶¶28-29].

## II. Applicable Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court clarified this standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007), ruling that to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (internal quotations omitted). On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555. Under the *Twombly* standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th

Cir. 2008) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)) (emphasis in original). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Id*. (citing *Twombly*, 127 S.Ct. at 1965) (internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*.

The Tenth Circuit Court of Appeals has interpreted *Twombly* as a middle ground between "heightened fact pleading," which is expressly rejected, and allowing complaints that are no more than "labels and conclusions," which courts should not allow. *Id.* (citing *Twombly*, 127 S.Ct. at 1964, 1965, 1974). Accepting the allegations as true, they must establish that the plaintiff plausibly, not just speculatively, has a claim for relief. *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id*. at 1248. The Tenth Circuit Court of Appeals instructed in *Robbins* that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context . . . [and] the type of case." *Id*. (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 231-32 (3d Cir. 2008)). A simple negligence action may require significantly fewer allegations to state a claim under Rule 8 than a case alleging antitrust violations (as in *Twombly*) or constitutional violations (as in *Robbins*). *See id*. at 1248.

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 997 (2002). The issue on a 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

6

evidence to support the claims." *Id.* The notice pleading standard "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* at 512.

Finally, "the 12(b)(6) standard does not require that [p]laintiff establish a prima facie case in [his] complaint, [but] the elements of each alleged cause of action help to determine whether [p]laintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citations omitted). "[G]eneral assertions of discrimination and retaliation, without any details whatsoever of events leading up to . . . termination, are insufficient to survive a motion to dismiss," and "[w]hile specific facts are not necessary, some facts are." *Id.* at 1193 (citation omitted).

### III. Analysis

#### A. Claims Against Sheriff Glanz in his Individual Capacity

It is well settled that personal capacity suits against individual supervisors are inappropriate under Title VII. *See Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996) (citing *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993)); *Lewis v. Four B Corp.*, 2005 WL 4888069, at *2 (10th Cir. Aug. 11, 2005) (unpublished).

Furthermore, "[a] claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement." *Allen v. Denver Public School Bd.*, 928 F.2d 978, 983 (10th Cir. 1991) (overturned on other grounds). Although plaintiff asserts claims against Sheriff Glanz in his individual capacity, the Petition alleges no acts or omissions by the Sheriff.

Accordingly, plaintiff's claims against Sheriff Glanz in his individual capacity must be dismissed.

#### B. Disparate Treatment

7

Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[2] Under *Khalik*, the court looks to the elements of a cause of action to determine whether a plaintiff has set forth sufficient factual allegations to state a claim. To establish a prima facie case of race discrimination under Title VII and § 1981, plaintiff must show that (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) disparate treatment among similarly situated employees. *See Carney v. City & County of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008).[3]

## 1. Protected Class

The Petition satisfies the first element, as it alleges plaintiff is African American.[4]

## 2. Adverse Employment Action

The Tenth Circuit has stated:

> Conduct rises to the level of 'adverse employment action' when it constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. . . . Actions presenting nothing beyond a mere inconvenience or alteration of responsibilities, however, do not constitute adverse employment action.

*Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (citations omitted).

The Petition alleges the following adverse employment actions: First, Chaplain Hardgrove failed to adequately train him and hired a Caucasian named Cassandra as a part time worker. Second, Chaplain Hardgrove's successor, Mr. Holloway, took away his telephone, desk

---

[2] "In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under 42 U.S.C. §§ 1981 or 1983 or Title VII." *Carney v. City & County of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008).
[3] "While the 12(b)(6) standard does not require that [p]laintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine witer [p]laintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citations omitted).
[4] The Petition also alleges plaintiff was discriminated against because of his "national origin," but fails to specify his national origin. [Dkt. #2, Ex. 1, Petition, ¶16].

and supplies and gave them to Cassandra, moved him away from his supplies and forced him to share a computer with a volunteer   Third, when he began reporting to Sergeant Hinshaw, plaintiff suffered harsher discipline than his Caucasian coworkers, specifically, he "was called into an internal affairs investigation, forced to take a lie detector test for allegedly engaging in an inappropriate relationship with an inmate and ultimately terminated.[5]  Fourth, in January 2013, plaintiff requested a transfer to the classification and bond release position.  Randy Pierce informed him he had allegedly failed a background check and was therefore ineligible for a transfer, and that statement was completely false.

Plaintiff's allegations concerning failure to train, the hiring of another part time employee, moving him away from his supplies and making him share a computer do not, taken as true, establish "adverse employment action" against him.  *See id.*  In contrast, the alleged disparate discipline and denial of his request for transfer would meet the definition of "adverse employment action" set out in *Stinnett*.

### 3. Disparate Treatment Among Similarly Situated Employees

With respect to his allegations of disparate discipline, plaintiff must plead facts establishing that "he was treated differently than other similarly situated employees who violated work rules of comparable seriousness." *Aramburu v. The Boeing Company*, 112 F.3d 1398, 1404 (10th Cir. 1997) (citation omitted).  "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Id.* (citation omitted).

The Petition alleges two Caucasian employees, Sergeant Housley and Sergeant Kaiser, were not fired even though they were suspected of violating "procedure," resulting in an

---

[5] As noted below, plaintiff also alleges he was terminated because he complained of discrimination to Chief Robinette.

inmate's death.  Another Caucasian employee, Corporal Stroope, who was in charge of inmate accounts, was allegedly reassigned but not fired when money went missing from those accounts. Plaintiff also "suspects" none of the three were subjected to a polygraph test.  Additionally, plaintiff alleges he is aware of an intimate relationship between Major Shannon Clark and a Caucasian female employee, similarly situated to plaintiff, and neither was terminated.

These statements are wholly inadequate to meet the requirements set out in *Aramburu.* There is no allegation any of the comparators had the same supervisor as plaintiff or that they were subject to the same standards governing performance evaluation and discipline.  The Petition fails to identify what rules the comparators violated and, in the case of the alleged relationship between two employees, whether the relationship violated *any* policy or procedure. Taking as true the factual allegations of the petition, they fail to establish the comparators are "similarly situated employees who violated work rules of comparable seriousness."  *Id.*

Finally, with respect to plaintiff's claim that he was denied a transfer, the Petition fails to identify any similarly situated Caucasian employees who requested and received transfers.

Because the Petition fails to allege facts which, taken as true, establish a plausible claim of disparate treatment, the Title VII and § 1981 discrimination claims must be dismissed.

### B. Retaliatory Discharge

"To state a prima facie case for retaliation under Title VII, a plaintiff must show (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse and (3) that a causal connection existed between the protected activity and the materially adverse action."  *Khalik*, 671 F.3d at 1193 (citation omitted).  A complaint fails to state a plausible claim for retaliation where plaintiff's factual allegations do not establish a "nexus between the person(s) to whom [he] complained and the

10

person who fired [him]" and there is "nothing other than sheer speculation to link" the allegedly retaliatory actions "to a discriminatory or retaliatory motive." *Id.* at 1194.

The Petition alleges both that (1) when plaintiff began working for Sergeant Hinshaw, he was called into an internal investigation, forced to take a lie detector test, and ultimately fired for allegedly engaging in an inappropriate relationship; and (2) shortly after he complained to Chief Robinette because race discrimination was worsening, he was terminated from his employment "out of retaliation for complaining about race discrimination." Plaintiff has failed to establish a nexus between Chief Robinette—the person to whom he complained—and the person who fired him. Indeed, he has failed to identify the person who fired him. Therefore, plaintiff's retaliatory discharge claim is subject to dismissal.

### D. Title VII—Failure to Exhaust Administrative Remedies

Sheriff Glanz also seeks dismissal of plaintiff's Title VII claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII. *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996). To exhaust administrative remedies, a plaintiff must timely file a charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(b). For a charge to be timely in a deferral state like Oklahoma, it must be filed within 300 days of the last discriminatory act. 42 U.S.C. § 2000e-5(e)(1). Further, even if a charge is timely filed, acts outside of the 300 day period may not be used as evidence to prove a claim of discrimination but may be used as background information. *Perez v. St. John Medical Center*, 2009 WL 3254926, at *5 (N.D. Okla. Oct. 6, 2009) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

The EEOC charge itself is not attached to the Petition. The Petition does not allege what date plaintiff was fired, when any of the other alleged discriminatory acts occurred, when the

11

charge was filed or when plaintiff received his right to sue letter. As a result, it is impossible to determine whether any of the alleged discriminatory acts occurred within 300 days of the filing of the charge. Thus, plaintiff has failed to state facts which, taken as true, establish subject matter jurisdiction.

## IV. Conclusion

Sheriff Glanz's Motion to Dismiss pursuant to Rule 12(b)(1) and (6) is granted as follows:

- Plaintiff's IIED claim and his Title VII claims against Sheriff Glanz in his individual capacity are dismissed with prejudice.

- Plaintiff's § 1981 claim against Sheriff Glanz in his individual capacity is dismissed without prejudice.

- Plaintiff's Title VII and § 1981 claims against Sheriff Glanz in his official capacity are dismissed without prejudice.

Plaintiff is given leave to file an Amended Complaint on or before November 14, 2014.[6]

ENTERED this 24th day of October, 2014.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[6] If plaintiff asserts a § 1981 claim against Sheriff Glanz in his official capacity, he may not include a demand for punitive damages in connection with that claim.