## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

GODWIN EHIREMAN,              )
                                 )
              Plaintiff,      )
                                 )     CASE NO. 14-CV-292-GKF-FHM
vs.                             )
                                 )
STANLEY GLANZ, SHERIFF OF      )
TULSA COUNTY, in his individual and    )
official capacities,              )
                                 )
              Defendant.     )

## AMENDED COMPLAINT

COMES NOW the Plaintiff, Godwin Ehireman, by and through his attorney of record, Daniel Smolen of *Smolen, Smolen & Roytman PLLC*, and brings this action against the Defendant, Stanley Glanz, Sheriff of Tulsa County, in his individual and official capacities, for violations of his constitutionally protected rights arising out of his employment and termination by said Defendant.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a resident of Tulsa County, Oklahoma.

2. Defendant Stanley Glanz is citizen of the United States and a resident of Tulsa County, State of Oklahoma.

3. The incidents and occurrences that form the basis of the Plaintiff's action occurred in Tulsa County.

4. This Court has jurisdiction and venue is proper. The current claim was originally brought in State Court, and was removed to Federal Court by the Defendant.

5.   This is an action for damages and to secure protection of, and to redress deprivation of, rights secured by Title VII of the Civil Rights act of 1964, as amended 42 U.S.C §2000-2 hereinafter ("Title VII"), 42 U.S.C. § 1981, and 42 U.S.C. § 1983.

6.   Plaintiff, a resident of Tulsa County, State of Oklahoma.

7.   Plaintiff submitted an EEOC Intake Questionnaire on March 7, 2013, seeking to file a charge of discrimination, and made claims based on racial discrimination and retaliation as a result of reporting such discrimination to his superiors.

8.   On May 9, 2013, the Plaintiff submitted a formal Charge of Discrimination Form and provided that all discriminatory actions occurred between March 5, 2012 and March 5, 2013.

9.   On February 13, 2014, the Plaintiff received a Right to Sue letter from the EEOC.

10.  The Plaintiff filed his Petition in the current action in State Court on May 9, 2014, within 90 days of receiving his Right to Sue letter from the EEOC. As such, Plaintiff has complied fully with all prerequisites in this Court under Title VII.

11.  Compensatory damages are sought pursuant to 42 U.S.C. § 2000e-5(g).

12.  Costs and attorney's fees may be awarded pursuant to 42 U.S.C. § 2000e 5(g).

13.  Punitive damages are sought pursuant to 42 U.S.C. § 1983.

14.  Jurisdiction is proper and this action lies properly in the current court. This action was originally brought in Tulsa County as the unlawful employment practices complained of herein occurred within Tulsa County and because the Defendants conduct regular business in Tulsa County. The Defendant then removed this action to Federal Court.

## FACTS COMMON TO ALL CLAIMS

15.   The Plaintiff is an African American male.

16.   The Plaintiff's national origin is Nigeria.

17.   Plaintiff began working for the Defendants as a detention officer in July of 2005.

18.   Through the lottery system, the Plaintiff was assigned to work in the inmate library. Plaintiff was the first African American to hold this position. When Plaintiff began working in that position his supervisor, Chaplain Hardgrove, told him that he did not have time to train Plaintiff and insinuated he did not want Plaintiff in the position. Chaplain Hardgrove failed to train the Plaintiff and harbored animus towards him because of Plaintiff's race.

19.   Plaintiff continued to be subjected to different terms and conditions of employment as compared to his non-African American counterparts. In fact, Chaplain Hardgrove so resented the Plaintiff, because of his race, that Hardgrove hired a Caucasian part-time worker, Cassandra. The position had never required two people in the past.

20.   Following Hardgrove's retirement, Mr. Holloway became the Plaintiff's supervisor. Mr. Holloway took away Plaintiff's telephone, desk, and computer, and then moved Plaintiff to a different location away from the supplies he needed to complete his duties. All of the supplies that were taken from Plaintiff were given to Cassandra, the part-time Caucasian worker. Additionally, because Plaintiff's computer had been taken away, he was forced to share a computer with a volunteer. Plaintiff suffered this different and demeaning treatment because of his race and Nigerian national origin. His non-African American counterparts did not suffer differential treatment.

21.   Plaintiff also suffered harsher discipline than his Caucasian coworkers when he began reporting to Sergeant Hinshaw. Specifically, Plaintiff was called into an internal affairs investigation and forced to take a lie detector test for allegedly engaging in an inappropriate relationship with an inmate. Plaintiff is aware of non-African American coworkers who were not disciplined as harshly as he was for similar or worse policy violations.

22.   Specifically, Plaintiff recalls that even amidst suspicion that Sergeant Housley (Caucasian) and Sergeant Kaiser (Caucasian) violated procedure, which resulted in an inmate's death, those individuals were not fired. While he does not have current access to the TCSO policies and regulations, the Plaintiff is aware of formalized TCSO policies prohibiting the mistreatment of inmates, a violation which easily surpasses the alleged violation for which the Plaintiff was fired. Further, Sergeants Housley and Kaiser's actions violated the inmate's constitutional rights preventing cruel and unusual punishment, as well as statutes regulating the treatment of prisoners.

23.   Additionally, Corporal Stroope, a Caucasian employee, was in charge of inmate accounts. However, when moneys went missing on her watch she was reassigned and not fired. Again, while the Plaintiff does not currently have access to the TCSO policies and regulations, the Plaintiff is aware of formalized TCSO policies prohibiting the mismanagement of funds, and asserts that this violation is clearly equal to, or worse than, the violation for which the Plaintiff was allegedly fired.

24.   Upon information and belief, the Plaintiff is aware of an intimate relationship between Major Shannon Clark and a Caucasian TCSO female employee, similarly situated to Mr. Ehireman, wherein neither were disciplined nor terminated after Defendant learned of the relationship. While the Plaintiff does not currently have access to the TCSO policies and

regulations, he is aware of a formalized policy regulating the fraternization of employees, and asserts that such violation is equal to, or worse than, the violation for which the Plaintiff was allegedly fired.

25.   Plaintiff was terminated although similarly situated non-African American coworkers were not. In fact, Plaintiff was terminated even though he had never received written discipline or any form of discipline prior to the incident that allegedly justified his termination.

26.   Plaintiff further suspects that the aforementioned individuals were not subjected to a polygraph test, despite the severity of their policy violations.

27.   Additionally, in or around January 2013, Plaintiff requested a transfer to the classification and bond release position. Randy Pierce informed the Plaintiff that he had allegedly failed a background check and was therefore ineligible for transfer. This statement was completely false, as Plaintiff never failed a background check. Plaintiff is unaware of any non-African American coworkers who were falsely told they failed a background check. Upon information and belief that will be confirmed during discovery, the Plaintiff believes there are a number of similarly situated Caucasian coworkers who were permitted to transfer. Specifically, the Plaintiff recalls a young Caucasian male receiving a transfer, however the employee was a recent hire, and the Plaintiff did not know his name. The Plaintiff was denied the transfer and told he failed the background check because of his race and Nigerian national origin.

28.   The Defendant is responsible for the institution of, and compliance with, TCSO policies and regulations. The Plaintiff is aware of a formal TCSO policy prohibiting discrimination. Further, the Plaintiff is aware of a large-scale investigation in 2008, during which, the Plaintiff reported discriminatory activity to Chief Robinette, who then reported the

discrimination to the Defendant directly. Between 2008 and the Plaintiff's termination, the Defendant took no actions to curtail or remedy the discriminatory actions against the Plaintiff.

29. Finally, shortly after reporting worsening racial discrimination to Chief Robinette, the Plaintiff was terminated from his employment with TCSO, by Chief Robinette, in early February 2013. The Plaintiff asserts that his termination was retaliatory in response to his complaints regarding race discrimination.

30. The Employment Application Form for the Tulsa County Sheriff's Office, listing Stanley Glanz as Sheriff, requires all applicants to agree that, "[i]f employed, I will comply with all Rules and Regulations and Policies and Procedures as set forth in the Tulsa County Sheriff's Office." As such, all employees at the Tulsa County Sheriff's Office are subject to the same standards and discipline as the Plaintiff.

**FIRST CLAIM FOR RELIEF**
**DISCRIMINATION BASED ON RACE (TITLE VII)**
**(as to the Defendant in his Official Capacity)**

31. Plaintiff incorporates as if re-alleged the preceding paragraphs.

32. By terminating the Plaintiff from his employment and treating him differently than similarly situated Caucasian coworkers, the Defendant has violated Title VII of the Civil Rights Act of 1964.

WHERFORE, Plaintiff prays for judgment against the Defendant for:

a. Back pay and lost benefits; front pay until normal retirement;

b. Compensatory damages for his mental anguish, pain and suffering and other non-pecuniary losses;

c. Punitive damages for the intentional and knowing acts of discrimination committed by the management and executives;

d. His attorney fees and the costs and expenses of this action;

e.   Such other relief as the Court deems just and equitable.

## SECOND CLAIM FOR RELIEF
## 42 U.S.C. § 1981
### (as to the Defendant in his Individual and Official Capacities)

33.   Plaintiff incorporates as if re-alleged the preceding paragraphs.

34.   By terminating the Plaintiff from his employment and treating him differently than similarly situated Caucasian coworkers, the Defendant has violated 42 U.S.C. § 1981.

WHERFORE, Plaintiff prays for judgment against the Defendant for:

a.   Back pay and lost benefits; front pay until normal retirement;

b.   Compensatory damages for his mental anguish, pain and suffering and other non-pecuniary losses;

c.   Punitive damages for the intentional and knowing acts of discrimination committed by the management and executives;[1]

d.   His attorney fees and the costs and expenses of this action;

e.   Such other relief as the Court deems just and equitable.

## THIRD CLAIM FOR RELIEF
## RETALIATION (TITLE VII)
### (as to the Defendant in his Official Capacity)

35.   Plaintiff incorporates as if re-alleged the preceding paragraphs.

36.   Plaintiff complained about the disparity in treatment.

37.   By terminating Plaintiff's employment in retaliation for his complaints regarding the unfair treatment and race discrimination, Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a).

WHERFORE, Plaintiff prays for judgment against the Defendant for:

---

[1] In his § 1981 claim, the Plaintiff does not seek punitive damages against the Defendant in his official capacity, but rather, only seeks punitive damages against the Defendant in his individual capacity.

a.  Back pay and lost benefits; front pay until normal retirement;

b.  Compensatory damages for his mental anguish, pain and suffering and other non-pecuniary losses;

c.  Punitive damages for the intentional and knowing acts of discrimination committed by the management and executives;

d.  His attorney fees and the costs and expenses of this action;

e.  Such other relief as the Court deems just and equitable.

Respectfully submitted,

/s/ Daniel E. Smolen
Daniel E. Smolen, OBA# 19943
SMOLEN, SMOLEN & ROYTMAN, PLLC
701 S. Cincinnati Ave.,
Tulsa, OK 74119
P: (918) 585-2667
F: (918) 585-2669
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on November 14, 2014, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Douglas A. Wilson

/s/ Daniel E. Smolen